IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| **NOKIA TECHNOLOGIES OY,**<br><br>Plaintiff,<br><br>v.<br><br>**LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD., LENOVO GROUP, LTD., LENOVO BEIJING, LTD., LENOVO PC HK LIMITED, AND LENOVO (UNITED STATES), INC.,**<br><br>Defendants. | **CIVIL ACTION NO.**<br><br>**5:19-cv-00427-BO**<br><br>**JURY TRIAL DEMANDED** |

**BRIEF IN SUPPORT OF NOKIA'S MOTION TO DISMISS LENOVO (UNITED STATES), INC.'S SECOND COUNTERCLAIM: VIOLATION OF THE NORTH CAROLINA UNFAIR TRADE PRACTICES ACT**

# TABLE OF CONTENTS

I. NATURE OF THE CASE ..................................................................................................................1
II. STATEMENT OF FACTS ..............................................................................................................4
III. ARGUMENT ....................................................................................................................................5
    A. Legal Standard ........................................................................................................................5
    B. Lenovo Cannot Show a Violation of the UDTPA Based on an Alleged Breach of Contract. ........................6
        i. Lenovo pleads nearly identical allegations for its two counterclaims. .....................................................7
    C. Lenovo Fails to Plead Reliance on Nokia's Alleged Failure to Timely Declare its Patents, and Thus Fails to Establish Proximate Cause. ..................................................................9
        i. Lenovo does not allege that it relied on Nokia's alleged untimely patent declarations .........................10
        ii. This Court's precedent confirms that dismissal is appropriate. .............................................................13
IV. CONCLUSION ..............................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AMEC Env't & Infrastructure, Inc. v. Structural Assocs., Inc.*,
No. 7:13-CV-21-BO, 2014 WL 1379519 (E.D.N.C. Apr. 8, 2014) (Boyle, J.) ......................... 8

*Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 4948567
(N.D. Cal. Oct. 18, 2011) .................................................................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................... 5, 6

*Avent v. State Farm Fire & Cas.*,
No. 5:16-CV-278-BO, 2016 WL 6208478 (E.D.N.C. Oct. 24, 2016) (Boyle,
J.) ....................................................................................................................................... 8

*Bartolomeo v. S.B. Thomas, Inc.*,
889 F.2d 530 (4th Cir. 1989) ............................................................................................. 9

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) .......................................................................................... 6, 9

*Bumpers v. Cmty. Bank of N. Va.*,
367 N.C. 81, 747 S.E.2d 220 (2013) ...................................................................... 3, 10, 12

*Caper Corp. v. Wells Fargo Bank N.A.*,
578 Fed. Appx. 276 (4th Cir. 2014) ............................................................................ 3, 10

*Carolina Power & Light Co. v. Aspect Software, Inc.*,
No. 5:08-CV-00449BO, 2009 WL 256332 (E.D.N.C. Feb. 3, 2009) (Boyle, J.) ............... 8

*CDI Corp. v. HCL Am., Inc.*,
No. 5:17-CV-550-D, 2019 WL 1083775 (E.D.N.C. Mar. 7, 2019) ................................... 9

*Dalton v. Camp*,
353 N.C. 647, 548 S.E.2d 704 (2001) .............................................................................. 10

*Domtar AI Inc. v. J.D. Irving, Ltd.*,
43 F. Supp. 3d 635, 641 (E.D.N.C. 2014) (Boyle, J.) ........................................................ 8

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ............................................................................................. 6

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) ............................................................................................. 5

*Indep. Warehouse v. Kim*,
  No. 4:17-CV-49-BO, 2017 WL 4322399 (E.D.N.C. Sept. 28, 2017) (Boyle, J.) ...................... 8

*Jones v. Harrelson & Smith Contractors, LLC*,
  194 N.C. App. 203, 670 S.E.2d 242 (2008), *aff'd*, 363 N.C. 371, 677 S.E.2d
  453 (2009) ............................................................................................................................. 8

*Mitchell v. Linville*,
  148 N.C. App. 71, 557 S.E.2d 620 (2001) ........................................................................ 6, 9

*PCS Phosphate Co., Inc. v. Norfolk S. Corp.*,
  559 F.3d 212 (4th Cir. 2009) ...................................................................................... 2, 6, 8, 9

*Penguin Restoration, Inc. v. Nationwide Mutual Ins., Co.*.
  No. 5:13-CV-63-BO, 2014 WL 715123 (Feb. 21, 2014) (Boyle, J.) ................................. 11, 13

*Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*,
  231 N.C. App. 70, 752 S.E.2d 661 (2013) ............................................................................. 6

*Raleigh Flex Owner I, LLC v. MarketSmart Interactive, Inc.*,
  No. 1:09CV699, 2011 WL 923356 (M.D.N.C. Mar. 7, 2011) ............................................... 11

*Solum v. Certainteed Corp.*,
  147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) ........................................................................... 10

*Terry's Floor Fashions, Inc. v. Georgia-Pac. Corp.*,
  No. 5:97-CV-683-BR(2), 1998 WL 1107771 (E.D.N.C. July 23, 1998) .................................. 8

**STATUTES**

North Carolina's Unfair or Deceptive Trade Practices Act ................................................... passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 2, 5

## I. NATURE OF THE CASE

In this case, Nokia has currently asserted 10 patents that cover revolutionary inventions that make video much more efficient to transmit and receive, which is critical when sending video to portable devices, like laptops and tablets, over the internet. Nokia's inventions allow Lenovo's devices to significantly compress and later decompress video, with a negligible reduction in quality. Today, over *eighty percent* of videos on the internet rely on Nokia's inventions, and for this reason, almost every video-playback device currently on the market incorporates Nokia's patented technology. To date, more than fifty companies that manufacture video devices have obtained a license from Nokia for permission to use its inventions in video coding. Lenovo has to date refused to enter into such a license, despite using Nokia's patented technology in the video products it sells worldwide.

Because of the efficiencies created, the International Telecommunications Union ("ITU") incorporated Nokia's video decoding inventions in its H.264 video decoding standard promulgated in 2003. Nokia was a member of the ITU and a leading developer of the H.264 standard. Nokia was awarded hundreds of patents worldwide covering its work in video decoding. Nokia has voluntarily committed to the industry that it will make licenses available to implementers of the standard on terms that are reasonable and non-discriminatory ("RAND").

Nokia filed this patent infringement lawsuit against Lenovo because Lenovo has been using Nokia's inventions in its video products for years, yet refuses to enter into a license with Nokia and pay appropriate compensation. Although Lenovo is headquartered in China, Nokia has also sued Lenovo's United States sales affiliate, which participates in the infringement of Nokia's patents. Lenovo U.S. has appeared in this lawsuit, while the Lenovo Chinese affiliates (represented by the same counsel as Lenovo U.S.) have refused to waive service and have required Nokia to proceed through the Hague Convention to serve this suit. As of this date,

1

despite diligent efforts by Nokia, the Lenovo Chinese defendants have not yet been formally served pursuant to the Hague Convention.[1]

In its original answer, Lenovo denied infringement and challenged the validity of Nokia's patents. Then, by amendment on May 18, 2020, Lenovo asserted Unfair Trade Practices Act and breach of contract counterclaims against Nokia premised on a new theory. Lenovo's theory is that Nokia failed to tell the ITU before it promulgated the H.264 standard that Nokia had patent claims covering the H.264 standard, in violation of ITU rules. However, the fundamental fact Lenovo pleads that is the lynchpin of both of its counterclaims – that Nokia failed to declare its essential patent claims in violation of ITU rules – is demonstrably incorrect. Nokia timely filed its disclosure in accordance with the ITU rules. But unfortunately, at the 12(b)(6) stage, the Court is required to presume that all allegations made by Lenovo are true, even if they are actually false, and is required to limit its analysis to the four corners of the complaint. Because of this, the present motion challenges only the legal insufficiency of Lenovo's counterclaims under the North Carolina's Unfair or Deceptive Trade Practices Act ("UDTPA"). Nokia will await the summary judgment process to challenge the evidentiary underpinnings (or lack thereof) for Lenovo's breach of contract counterclaim.

Lenovo's UDTPA counterclaim fails as a matter of law for two independent reasons. *First*, North Carolina courts have repeatedly held that a breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA. *PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009) ("North Carolina courts have

---

[1] The service process firm retained by Nokia has observed additional delays to Hague service due to the increased trade tensions between the U.S. and China and the current COVID-19 pandemic. To effect service in China, service documents are first received and reviewed by the Ministry of Justice of the People's Republic of China, the Ministry of Justice then issues the documents to a local court for service, and the local court must effect service and provide proof to the Ministry of Justice. The Ministry of Justice provides no information about which Chinese court will effect service or when that will occur. Instead, the process is subject entirely to the will of the entity in control of the Ministry of Justice of the People's Republic of China. Nokia's service process firm estimates that in the current climate this could take anywhere from 1-2 years.

2

repeatedly held that a mere breach of contract, even if intentional, cannot be the basis for a UDTPA.") (citations and quotations marks omitted). Lenovo's alleges that the ITU rules are contractual, and that Nokia violated its contract with the ITU "by failing timely to disclose its allegedly essential patent rights in accordance with the requirements of the ITU IPR policy and by demanding licensing fees and asserting infringement of patents that were not timely disclosed." Countercl. at ¶ 31. But, in addition to asserting a breach of contract claim, Lenovo also uses Nokia's alleged breach as its predicate to assert violations of the UDTPA. Because Lenovo's theory underlying its UDTPA claim is nothing more than an allegation that Nokia intentionally breached its contract with the ITU, Lenovo's UDTPA claim should be dismissed.

*Second*, a claimant asserting a UDTPA violation must plead facts sufficient to show that the alleged unfair act is the *proximate cause* of the claimant's injury. *E.g.*, *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 90, 747 S.E.2d 220, 227 (2013). Here, Lenovo presents the novel theory that its injury is having to defend against the instant patent infringement lawsuit, meaning that Lenovo's UDTPA counterclaim is, in essence, a request for its attorneys' fees in this case. Nokia has been unable to find any other cases where a defendant used a UDTPA counterclaim in this way. To show that Nokia's conduct was the proximate cause of Lenovo's infringement, Lenovo "must plausibly allege *actual reliance*" on Nokia's allegedly unfair or deceptive act. *Caper Corp. v. Wells Fargo Bank N.A.*, 578 Fed. Appx. 276, 287 (4th Cir. 2014) (emphasis added). "[A]ctual reliance requires that the plaintiff have *affirmatively incorporated the alleged misrepresentation into his or her decision-making process*: if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether." *Bumpers*, 367 N.C. at 90, 747 S.E.2d at 227 (emphasis added). In this respect, Lenovo's claim is fatally flawed, as it has not alleged that it actually considered, or even knew of, Nokia's allegedly untimely

3

patent declarations to the ITU when it decided to implement the infringing video decoding functionality in its products. Even taking as true, for purposes of this motion only, Lenovo's theory of disclosure, Lenovo has failed to allege facts that would show that if Nokia had timely declared its patents (under Lenovo's view), Lenovo would have done something different to avoid infringing Nokia's patents. Thus, Lenovo's UDTPA claim warrants dismissal.

## II.  STATEMENT OF FACTS

Nokia alleged in its original complaint that Lenovo is infringing ten Nokia patents that relate to H.264 video coding technology. Compl. at ¶¶ 45-58. Lenovo admits that Nokia "actively participated in the H.264 standard setting process" and "submitted many proposals for technology to be included in the H.264 standard." Countercl. at ¶ 43. Lenovo admits that its products "support the H.264 standard." *Id.* at ¶ 20. Lenovo also admits that it has not acquired a license to practice Nokia's H.264 patents. Answer at ¶ 37.

Lenovo alleges that all of Nokia's asserted H.264 related patents are unenforceable. Countercl. at ¶ 5. Specifically, Lenovo alleges that because of Nokia's participation in the H.264 standard setting process, Nokia was contractually "bound by the ITU's Patent Policy." *Id.* at ¶ 22. Lenovo alleges that "Nokia's disclosure obligations are binding contractual commitments with the ITU and its members and other SSOs participating in the H.264 standard development." *Id.* at ¶ 31. Lenovo alleges that "Nokia breached these contractual commitments at least by failing timely to disclose its allegedly essential patent rights in accordance with the requirements of the ITU IPR policy and by demanding licensing fees and asserting infringement of patents that were not timely disclosed." *Id.* at ¶ 39.

Lenovo alleges the *same harm* for both of its breach of contract and UDTPA counterclaims: having to incur attorney's fees and costs to defend against Nokia's patent infringement allegations, and having to suffer vague, unspecified reputational damages because

4

Case 5:19-cv-00427-BO   Document 55   Filed 06/29/20   Page 8 of 20

Lenovo has been accused of patent infringement: "loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers." *Id.* at ¶¶ 40, 46. Yet Lenovo never gives any specifics on how being accused of patent infringement has hurt its reputation.[2]

Lenovo does not allege that it relied on Nokia's alleged conduct when it decided to implement the accused technology in its products, but does allege that it "relied on the ITU's rules in supplying products that support the H.264 [standard]." *Id.* at ¶ 31. Lenovo does not allege that if Nokia had timely declared its patents (according to Lenovo's view of the requirements), the standard setting participants *would have* selected alternative technology, but it does allege that the standard setting participants theoretically "*could have considered whether to adopt* alternative technologies or declined to include the relevant functionality in the standard." *Id.* at ¶ 26 (emphasis added).

### III. ARGUMENT

#### A. Legal Standard

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of claims set forth in a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to show more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, a plaintiff must allege facts, when

---

[2] Nor does Lenovo plead that this assertion of patent infringement, as opposed to the many other times Lenovo has been sued in U.S. courts for patent infringement, is somehow the straw that broke the camel's back of its reputation. A U.S. district court database search shows Lenovo has been sued for patent infringement 161 times over the past 10 years. It is utterly implausible to assert that this patent infringement case, as opposed to the many other times Lenovo has been accused of violating U.S. patents, is the proximate cause of any reputational problems Lenovo is currently experiencing.

5

accepted as true, that "show" that it has stated a claim entitling it to relief. *See id.* (quoting *Twombly,* 550 U.S. at 557); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011) (explaining that consideration of a 12(b)(6) motion is limited to the complaint and documents attached or incorporated into the complaint). Dismissal is appropriate when "the complaint on its face reveals the absence of facts sufficient to make a good claim." *Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.,* 231 N.C. App. 70, 74, 752 S.E.2d 661, 663 (2013).

### B. Lenovo Cannot Show a Violation of the UDTPA Based on an Alleged Breach of Contract.

Dismissal of Lenovo's Second Counterclaim is warranted because North Carolina case law establishes that alleging a breach of contract, even an intentional breach, does not give rise to a violation of the UDTPA. *See, e.g.*, *Mitchell v. Linville*, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001) ("Neither an intentional breach of contract nor a breach of warranty…constitutes a violation of Chapter 75."). North Carolina courts "differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (citation and quotation marks omitted).

When the crux of a dispute is contractual, "substantial aggravating circumstances" must be shown in order to give rise to a UDTPA violation. *Id.* However, merely alleging an *intentional* breach of contract does not constitute "substantial aggravating circumstances" as a matter of law and thus cannot transform a breach of contract claim into a UDTPA cause of action. *E.g.*, *PCS Phosphate*, 559 F.3d at 224 (citations and quotations marks omitted). Because Lenovo's theory for a UDTPA violation is that Nokia intentionally breached its commitments to

the ITU, and alleges the same exact harm for its claimed breach of contract and UDTPA violation, Lenovo's UDTPA claim must be dismissed.

### i.   Lenovo pleads nearly identical allegations for its two counterclaims.

Lenovo's First Counterclaim (Breach of Contract) is based on allegations that Nokia breached its contractual commitments by: (i) "failing to timely disclose its allegedly essential patent rights in accordance with the requirements of the ITU IPR policy" and (ii) "demanding licensing fees and asserting infringement of patents that were not timely disclosed." Countercl. at ¶ 39. Lenovo's Second Counterclaim (Violation of the UDTPA) similarly is based on allegations that Nokia engaged in unfair and deceptive acts by: (i) "failing to timely disclose its claimed essential patent rights to the ITU" and (ii) "asserting infringement and demanding licensing fees on patents that were not timely disclosed, in contravention of ITU IPR policy." *Id.* at ¶¶ 43-44. Lenovo goes one step further for its UDTPA claim, alleging that Nokia's conduct was an intentional "scheme to induce the SSOs developing H.264 to standardize technology that Nokia would later claim is covered by its alleged standard essential patents." *Id.* at ¶ 21.

Lenovo's alleged harm for its UDTPA claim is identical to Lenovo's alleged harm for its breach of contract claim, as shown below with the overlapping language highlighted:

| Lenovo's alleged harm for breach of contract | Lenovo's alleged harm for UDTPA |
|---|---|
| (1) being forced to expend resources to defend claims of patent infringement (with such costs exceeding $75,000); (2) being forced to defend against or negotiate licenses to patents on which Nokia is seeking excessive royalties in contravention of ITU rules because Nokia is not entitled to royalties on untimely disclosed patents; and (3) suffering or being threatened with increased costs, loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers. *Id.* at ¶ 40. | (1) being forced to expend resources to defend claims of patent infringement based on the claimed essentiality of the patents-in-suit (with such costs exceeding $75,000); and (2) suffering or being threatened with: increased costs, loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers. *Id.* at ¶ 46. |

7

The fact that both counterclaims arise out of the same set of alleged facts relating to Nokia's obligations to the ITU, and that Lenovo alleges the same harm for both counterclaims, confirms that Lenovo's UDTPA claim is nothing more than a futile attempt to "artfully plead" a breach of contract claim in an effort to try and recover treble damages. *Compare id.* at ¶¶ 36-40 *with id.* at ¶¶ 41-47; *see Jones v. Harrelson & Smith Contractors, LLC*, 194 N.C. App. 203, 229, 670 S.E.2d 242, 259 (2008), *aff'd*, 363 N.C. 371, 677 S.E.2d 453 (2009) ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and allege UDTP[A] out of facts that are properly alleged as a breach of contract claim."); *Terry's Floor Fashions, Inc. v. Georgia-Pac. Corp.*, No. 5:97-CV-683-BR(2), 1998 WL 1107771, at *10 (E.D.N.C. July 23, 1998) (dismissing a UDTPA claim and noting that "[t]he facts supporting plaintiff's unfair trade practices claim are indistinguishable from those of plaintiff's breach of warranty claims); *PCS Phosphate* 559 F.3d at 224 ("[North Carolina law] does not permit a party to transmute a breach of contract claim into a tort or UDTPA claim for extraordinary damages because awarding punitive or treble damages would destroy the parties' bargain and force the defendant to bear a risk it never took on.").

This Court has consistently dismissed UDTPA claims that "arise[] out of a contractual dispute." *Domtar AI Inc. v. J.D. Irving, Ltd.*, 43 F. Supp. 3d 635, 641 (E.D.N.C. 2014) (Boyle, J.); *see also Carolina Power & Light Co. v. Aspect Software, Inc.*, No. 5:08-CV-00449BO, 2009 WL 256332, at *3 (E.D.N.C. Feb. 3, 2009) (Boyle, J.) ("Given the contractual center of this dispute, Plaintiff's UTPA claims must be dismissed."); *Indep. Warehouse v. Kim*, No. 4:17-CV-49-BO, 2017 WL 4322399, at *3 (E.D.N.C. Sept. 28, 2017) (Boyle, J.) (dismissing a UDTPA claim that arose out of a contractual dispute); *Avent v. State Farm Fire & Cas.*, No. 5:16-CV-278-BO, 2016 WL 6208478, at *2 (E.D.N.C. Oct. 24, 2016) (Boyle, J.) (same); *AMEC Env't &*

*Infrastructure, Inc. v. Structural Assocs., Inc.*, No. 7:13-CV-21-BO, 2014 WL 1379519, at *5 (E.D.N.C. Apr. 8, 2014) (Boyle, J.) (same). Other courts in this district have done the same. *See, e.g.*, *Broussard*, 155 F.3d at 347 (collecting cases); *CDI Corp. v. HCL Am., Inc.*, No. 5:17-CV-550-D, 2019 WL 1083775, at *5 (E.D.N.C. Mar. 7, 2019) (dismissing a UDTPA claim because the allegations pleaded in support of the claim all "concern[ed] the rights and duties of the parties under the contract").

Lenovo's conclusory allegation that Nokia's alleged conduct was an intentional scheme does not save Lenovo's claim. "North Carolina courts have repeatedly held that a mere breach of contract, *even if intentional*, is not sufficiently unfair or deceptive to sustain an action under the UDTPA." *PCS Phosphate*, 559 F.3d at 224 (citations and quotations marks omitted) (emphasis added); *see also Mitchell*, 148 N.C. App. at 74, 557 S.E.2d at 623 ("Neither an intentional breach of contract nor a breach of warranty…constitutes a violation of Chapter 75.")*; Broussard*, 155 F.3d at 347; *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 536 (4th Cir. 1989).

Lenovo's UDTPA claim is premised entirely on allegations related to a breach of contract, and, more specifically, on allegations directed at showing an intentional breach of contract. It is well-established that such allegations do not present "substantial aggravating circumstances" and thus Lenovo's pleading fails to state a viable claim for relief under the UDTPA.

### C. Lenovo Fails to Plead Reliance on Nokia's Alleged Failure to Timely Declare its Patents, and Thus Fails to Establish Proximate Cause.

Dismissal of the Second Counterclaim is also warranted because Lenovo has failed to plead that it was actually aware of the timing of Nokia's patent declarations to the ITU or relied on the timing of those declarations for any purpose relevant to this litigation. A UDTPA claimant must allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) that

*proximately caused* actual injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 548 S.E.2d 704, 711 (2001). In order to plead the proximate cause element, the party asserting the UDTPA violation "must plausibly allege actual reliance" on the unfair or deceptive act. *Caper*, 578 Fed. Appx. at 287; *see also Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) ("a plaintiff must prove detrimental reliance on the alleged misrepresentation to satisfy the proximate cause requirement."). "[A]ctual reliance requires that the plaintiff have *affirmatively incorporated the alleged misrepresentation into his or her decision-making process*: if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether." *Bumpers*, 367 N.C. at 90, 747 S.E.2d at 227 (emphasis added).

Thus, Lenovo must plead facts sufficient to show (1) that it actually considered Nokia's alleged failure to disclose its patents to the ITU when it chose to use H.264 decoding in its products, and (2) that if Nokia had submitted its patent declarations in accordance with Lenovo's view of the ITU rules, Lenovo would have changed its conduct as a proximate result of Nokia's different disclosure.

### i. Lenovo does not allege that it relied on Nokia's alleged untimely patent declarations.

Lenovo does not allege that it even considered Nokia's alleged failure to timely disclose its patents to the ITU when it chose to implement the infringing functionality in its products, let alone relied on it. It is unsurprising that Lenovo does not make this allegation, because Lenovo (United States), Inc., the entity that filed this counterclaim, denied in its Answer that it designs and manufactures the Accused Products. Answer at ¶ 10. Rather, this Lenovo entity only imports and sells them.

In paragraph 31 of Lenovo's complaint, Lenovo alleges that it "reasonably relied on the *ITU's rules* in supplying products that support the H.264 [standard]." Countercl. at ¶ 31

10

(emphasis added). But that is not enough. North Carolina case law requires the claimant to plead reliance on the *alleged conduct*, i.e., Nokia's alleged failure to timely submit declarations according to Lenovo's view of the ITU rules. *E.g.*, *Penguin Restoration, Inc. v. Nationwide Mutual Ins., Co..* No. 5:13-CV-63-BO, 2014 WL 715123, at *2-3 (Feb. 21, 2014) (Boyle, J.) ("Reliance demands evidence showing that the plaintiff suffered actual injury as a proximate result of *defendant's deceptive statement or misrepresentation*.") (emphasis added). Not only is it unclear what Lenovo means when it says it relied upon the "ITU's rules," but relying on the rules is in itself insufficient to state a claim under the UDTPA. A UDTPA claim must plead proximate causation from some conduct of the alleged violator, and that requires reliance on the alleged violator's conduct – not the mere existence of the ITU's rules. Countercl. at ¶ 31. Lenovo has not alleged such reliance here.

In paragraph 46, Lenovo alleges that "[a]s a direct, proximate, and foreseeable result of Nokia's unfair, deceptive, and wrongful conduct, as alleged above, Nokia unjustly benefitted, and Lenovo United States suffered harm in North Carolina and elsewhere, both as a customer (i.e., a potential licensee) and as a supplier of downstream products." *Id.* at ¶ 46. However, this conclusory statement falls well short of pleading allegations sufficient to establish that Lenovo detrimentally relied on Nokia's alleged failure to timely disclose its patent rights. *See, e.g.*, *Raleigh Flex Owner I, LLC v. MarketSmart Interactive, Inc.*, No. 1:09CV699, 2011 WL 923356 (M.D.N.C. Mar. 7, 2011) ("for purposes of assessing the reliance/proximate cause element of Plaintiff's fraud and UDTPA claims, the issue is not whether the Estoppel Certificate 'was a matter of importance' to Plaintiff, but rather whether Plaintiff actually relied on alleged false statements in the Estoppel Certificate in a manner that proximately caused damages.").

Finally, in paragraph 26, Lenovo appears to allege that other JVT members relied on Nokia's alleged failure to timely submit declarations under Lenovo's view of the ITU rules: "[i]f Nokia had disclosed its allegedly essential patents, as it was required to do, the JVT *could have* considered whether to adopt alternative technologies or declined to include the relevant functionality in the standard." Countercl. at ¶ 26 (emphasis added). But whether JVT members may or may not have relied on Nokia's alleged conduct is completely irrelevant to a proximate cause analysis for Lenovo. *Lenovo* has to plead that *Lenovo* relied on Nokia's alleged conduct at the time it chose to incorporate Nokia's technology into its products. *See, e.g.*, *Bumpers*, 367 N.C. at 89, 747 S.E.2d at 227 (explaining that analyzing reliance requires "examin[ing] the mental state of the plaintiff").

Moreover, Lenovo's allegation in paragraph 26 also fails because Lenovo merely alleges that the JVT members "could have considered whether to adopt alternative technologies or declined to include the relevant functionality in the standard," not that an alternative technology would have in fact been adopted or that Nokia's technology would have in fact been left out of the standard. Countercl. at ¶ 26. Whether it was theoretically possible for the standard setters to consider a different technology is, once again, completely irrelevant. Lenovo must plead that there was actually another technology available and that the standard setters would have selected it over Nokia's technology. In other words, if Nokia's technology would have been selected for the standard regardless of whether Nokia had submitted a specific patent declaration under Lenovo's view of the ITU rules, then Nokia's alleged conduct is not the proximate cause of Lenovo's alleged harm. In *Apple Inc. v. Samsung Elecs. Co.*, the court rejected Apple's vague pleading that "[h]ad Samsung properly disclosed the existence of its IPR, the relevant SSO would have selected a viable alternative technology or would have decided not to incorporate

12

that proposal into the standard." No. 11-CV-01846-LHK, 2011 WL 4948567, at *4–6 (N.D. Cal. Oct. 18, 2011). The court held that Apple would need to allege that "there was an alternative technology that the SSO was considering during the standard setting process and that the SSO would have adopted an alternative standard had it known of the patent holder's intellectual property rights."[3] *Id.* at *5. Lenovo's allegation in this action does not even go as far as Apple's insufficient allegation, as Lenovo alleges only that the standard setters "could have considered" another technology. Thus, Lenovo's pleading here is insufficient as a matter of law.

### ii.  This Court's precedent confirms that dismissal is appropriate.

The insufficiency of Lenovo's Second Counterclaim is apparent when considered in light of this Court's opinion in *Penguin Restoration*. 2014 WL 715123, at *2-3. In *Penguin Restoration*, the defendant moved to dismiss plaintiff's UDTPA claim based on a failure to plead reliance. *Id.* at *3. The Court began its analysis by noting that "[a] UDTPA claim stemming from an alleged misrepresentation 'require[s] a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause.'" *Id.* (quoting *Bumpers*, 367 N.C. at 88, 747 S.E.2d at 227). The Court went on to specify that "[r]eliance demands evidence showing that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Id.* (internal quotation marks and citation omitted).

In its complaint, Penguin, a remediation contractor, asserted that the defendant, Nationwide Insurance, violated the UDTPA by misrepresenting that it would reinstate Penguin in its network if Penguin settled certain customer disputes. *Id.* After analyzing the allegations presented in Penguin's complaint, the Court stated the following:

---

[3] The *Apple* decision relates to a motion to dismiss an antitrust claim and not a UDTPA claim, but the reasoning is identical. The question is whether vaguely alleging that another technology could or even would end up in the standard is sufficient to show proximate cause. In *Apple*, the court found that it was not.

> It is clear that these allegations tell a story where Penguin made a decision based on the alleged misrepresentation. The final decision to settle the disputes was not merely a continuation of Penguin's earlier attempts to settle the problems because it had decided not to resolve them, informed defendants of its intent to not resolve the disputes, was suspended from the network, and was promised reinstatement before finally settling the dispute.

*Id.* This Court ultimately found that Penguin stated a claim under the UDTPA because the complaint contained "plain and unambiguous allegations that it indeed relied upon Nationwide's alleged intentional misrepresentation to its detriment." *Id.* Unlike the complaint at issue in *Penguin Restoration*, Lenovo's second counterclaim does not include *any* "allegations that it indeed relied upon [Nokia's] alleged intentional misrepresentation to its detriment." *Id.* Absent such allegations, Lenovo has failed to plead the proximate causation element and thus has not stated a claim for relief under the UDTPA.

## IV. CONCLUSION

For the foregoing reasons, Nokia requests that the Court dismiss Lenovo's Second Counterclaim: Violation of the North Carolina Unfair Trade Practices Act.

Date: June 29, 2020

Respectfully submitted,

/s/ *Theodore Stevenson, III*
Theodore Stevenson, III
TX State Bar No. 19196650
tstevenson@mckoolsmith.com
Warren Lipschitz
TX State Bar No. 24078867
wlipschitz@mckoolsmith.com
Richard Kamprath
TX State Bar No. 24078767
rkamprath@mckoolsmith.com
Albert M. Suarez IV
asuarez@mckoolsmith.com
TX State Bar No. 24113094
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201

14

Telephone: (214) 978-4000
Telecopier: (214) 978-4044

*COUNSEL FOR PLAINTIFF NOKIA TECHNOLOGIES OY*

/s/ *Matthew P. McGuire*
Matthew P. McGuire
N.C. State Bar. No. 20048
ALSTON & BIRD LLP
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Telephone: (919) 862-2200
Facsimile: (919) 862-2260
E-mail: matt.mcguire@alston.com

*LOCAL CIVIL RULE 83.1(D) COUNSEL FOR PLAINTIFF NOKIA TECHNOLOGIES OY*

15

# CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, I electronically filed the foregoing Brief in Support of Nokia's Motion to Dismiss Lenovo (United States), Inc.'s Second Counterclaim: Violation of the North Carolina Unfair Trade Practices Act with the Clerk of Court using the CM/ECF system, which will send notification of such filing and effectuate service to the counsel of record in this matter.

                              **ALSTON & BIRD LLP**

                              */s/ Matthew P. McGuire*
                              Matthew P. McGuire
                              N.C. State Bar. No. 20048
                              ALSTON & BIRD LLP
                              555 Fayetteville Street, Suite 600
                              Raleigh, NC 27601
                              Telephone: (919) 862-2200
                              Facsimile: (919) 862-2260
                              E-mail: matt.mcguire@alston.com

                              *LOCAL CIVIL RULE 83.1(D) COUNSEL*
                              *FOR PLAINTIFF NOKIA TECHNOLOGIES OY*