# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

NOKIA TECHNOLOGIES OY,
Plaintiff,

v.

LENOVO (SHANGHAI) ELECTRONICS
TECHNOLOGY CO. LTD., LENOVO GROUP,
LTD., LENOVO BEIJING, LTD., LENOVO PC
HK LIMITED, AND LENOVO (UNITED
STATES), INC.,

Defendants.

CIVIL ACTION NO. 19-CV-427

## DEFENDANT LENOVO (UNITED STATES) INC.'S OPPOSITION
## TO NOKIA'S MOTION TO DISMISS

# TABLE OF CONTENTS

                                                                                    **Page**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................3

        A.      The Standard-Setting Process and Competitive Safeguards...................................3

        B.      Nokia's Failure to Disclose the Asserted Patents During Standardization..............4

        C.      Nokia's Unlawful License and Litigation Campaign ...............................................5

III.    ARGUMENT .......................................................................................................6

        A.      Standard of Review...............................................................................................6

        B.      Lenovo Adequately Alleges Unfair and Deceptive Conduct Under North
                Carolina's Unfair Competition Law. .....................................................................6

        C.      Lenovo United States Alleges Injury Proximately Caused by Nokia's Unfair
                Competition............................................................................................................12

IV.     CONCLUSION.................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Electronics Co.*,
   No. 11-cv-01846, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ...........................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................6

*Avent v. State Farm Fire & Casualty*
   No. 16-cv-278, 2016 WL 6208478 (E.D.N.C. Oct. 24, 2016) ...............................12

*Bartolomeo v. S.B. Thomas, Inc.*,
   889 F.2d 530 (4th Cir. 1989) ....................................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................5

*Bridgetree, Inc. v. Red F Marketing LLC*,
   No. 3:10-cv-00228, 2013 WL 443698 (W.D.N.C., Feb. 5, 2013)............................6

*Caper Corp. v. Wells Fargo Bank, N.A.*,
   578 Fed. Appx. 276 (4th Cir. 2014).......................................................................14

*Clark Material Handling Co. v. Toyota Material Handling U.S.A., Inc.*,
   No. 3:12-CV-00510-MOC, 2015 WL 3514339 (W.D.N.C. Jun. 4, 2015) ..............11

*Cullen v. Valley Forge Life Insurance Co.*,
   161 N.C. App. 570, 589 S.E.2d 423 (N.C. Ct. App. 2003).......................................13

*In the Matter of Dell Computer Corporation*,
   Docket No. C-3658, 121 F.T.C. 616, 1996 WL 33412055 (F.T.C. May 20, 1996) ...........8, 15

*Domtar AI Inc. v. J.D. Irving, Ltd.*,
   43 F. Supp. 3d 635 (E.D.N.C. Aug. 20, 2014).........................................................12

*Drouillard v. Keister Williams Newspaper Services, Inc.*,
   108 N.C. App. 169, 423 S.E.2d 324 (N.C. Ct. App. 1992).......................................12

*First Atlantic Management Corp. v. Dunlea Realty Co.*,
   131 N.C. App. 242, 507 S.E.2d 56 (N.C. Ct. App. 1998)..........................1, 6, 7, 12

*Frezza v. Google Inc.*,
   No. 12-cv-00237, 2013 WL 1736788 (N.D. Cal. April 22, 2013)...........................14

*Johnson v. Phoenix Mutual Life Insurance Co.*,
   300 N.C. 247, 266 S.E.2d 610 (N.C. 1980) ................................................................8

*Marshall v. Miller*,
   302 N.C. 539, 276 S.E.2d 397 (N.C. 1981) ...........................................................6, 7

*United States v. Microsoft*,
   253 F.3d 34 (D.C. Cir. 2001) ....................................................................................16

*Mosley & Mosley Builders v. Landin Ltd.*,
   97 N.C. App. 511, 389 S.E.2d 576 (N.C. Ct. App. 1989)........................................11

*Nexus Techs., Inc. v. Unlimited Power Ltd.*,
   No. 1:19-CV-00009-MR, 2019 WL 4941178 (W.D.N.C. Oct. 7, 2019)...................11

*PCS Phosphate Co., Inc. v. Norfolk S. Corp.*,
   559 F.3d 212 (4th Cir. 2009) ....................................................................................12

*Penguin Restoration, Inc. v. Nationwide Mutual Insurance Co.*,
   No. 13-cv-63, 2014 WL 715123 (E.D.N.C. Feb. 21, 2014) .....................................14

*Poor v. Hill*,
   138 N.C. App. 19, 530 S.E.2d 838 (N.C. Ct. App. 2000).........................................11

*Raleigh Flex Owner I, LLC v. MarketSmart Interactive, Inc.*,
   No. 09-cv-699, 2011 WL 923356 (M.D.N.C. Mar. 7, 2011).....................................14

*South Atlantic Limited Partnership of Tennessee, L.P. v. Riese*,
   284 F.3d 518 (4th Cir. 2002) ...............................................................................10, 11

*Sarah Lee Corp. v. Carter*,
   351 N.C. 27, 519 S.E.2d 308 (N.C. 1999) ...............................................................13

*Software Pricing Partners, LLC v. Geisman*,
   No. 3:19-cv-00195-RJC-DCK, 2020 WL 3249984 (W.D.N.C. June 16, 2020).......10

*Solum v. Certainteed Corp.*,
   147 F. Supp. 3d 404 (E.D.N.C. Oct. 27, 2015)....................................................13, 14

*Spiegel, Inc. v. F.T.C.*,
   540 F.2d 287 (7th Cir. 1976) ......................................................................................7

*Stetser v. TAP Pharmaceutical Products Inc.*,
   165 N.C. App. 1, 598 S.E.2d 570 (2004).................................................................12

**Statutes**

15 U.S.C. § 45(a)(1).............................................................................................. *passim*

North N.C. Gen. Stat. § 75-1.1 ............................................................................................ *passim*

**Other Authorities**

Fed R. Civ. P. 12(b)(6).................................................................................................................5

# I. INTRODUCTION

In its counterclaims, Lenovo (United States) Inc. ("Lenovo United States") detailed how Nokia engaged in a pattern of misconduct with respect to the ten claimed-essential patents that Nokia asserts in this action. Nokia concedes that Lenovo United States' allegations state a claim for breach of contract based on Nokia's failure to timely disclose the asserted patents during the industry standardization process, but moves to dismiss Lenovo United States' counterclaim for violation of the North Carolina Unfair Trade Practices Act ("UDTPA"). Nokia argues that Lenovo United States: (1) cannot show a violation of the UDTPA because the claim arises solely from an alleged breach of contract (Br. in Supp. of Nokia's Mot. to Dismiss, ECF 55 at 6-9), and (2) has failed to plead proximate cause because it has not pled reliance on Nokia's failure to timely declare its patents (*id.* at 9-14). Both arguments are wrong.

*First*, Nokia is incorrect that Lenovo United States' UDTPA claim is "nothing more than an allegation that Nokia intentionally breached its contract" with the standard-setting organizations. (ECF 55 at 3.) Lenovo United States' UDTPA claim is much broader than a breach-of-contract claim and encompasses Nokia's wide-ranging course of unfair, unlawful, and deceptive conduct—namely, that Nokia manipulated the standards-setting process, disclosed its claimed-essential patents only after Lenovo and other adopters were "locked in" to the standard, and then exploited that position by asserting the patents aggressively against Lenovo United States and refusing to license on reasonable and non-discriminatory ("RAND") terms. This conduct, and the harm to Lenovo United States and the public that Lenovo United States details in its counterclaims, take Lenovo United States' claim far outside the ordinary breach-of-contract cases that Nokia relies on in its brief. Moreover, even if Lenovo United States' allegations were limited to Nokia's breach (they are not), because Nokia's breach involved deception and substantial aggravating circumstances, those allegations alone would support a UDTPA claim.

*Second*, Nokia's argument that Lenovo United States' claim fails because it does not plead actual reliance on Nokia's misrepresentations during the standards-setting process is based on mischaracterizations of both Lenovo United States' allegations and North Carolina pleading requirements. Contrary to Nokia's argument, actual reliance is not required for Lenovo United States' UDTPA claim, which is not based solely on Nokia's fraud and misrepresentations during the standards-setting process, but on Nokia's broader unfair and wrongful scheme to obtain untimely disclosed claimed-essential patents and use them to hold up Lenovo United States through serial litigation. Lenovo United States has plainly alleged actual harm from Nokia's unfair and unlawful assertion of its patents. Nothing further is required to plead proximate cause.

Contrary to Nokia's arguments, Lenovo United States has alleged a broad scheme of deceptive and unfair conduct by Nokia—beginning with Nokia's deceptive failure to disclose its asserted patents to the standard-setting organizations and culminating in a campaign to collect unfair licensing royalties—that harms both a North Carolina company (Lenovo United States) and the broader North Carolina public. This course of conduct cannot be brushed aside as a mere breach of contract, or wrongly pigeonholed as typical fraud case involving a misrepresentation by one party to another. The wrongdoing is far more complex and the scope of harm much broader across society. Nokia's conduct falls squarely within what the North Carolina UDTPA and its analog—Section 5 of the Federal Trade Commission (FTC) Act—were intended to address: "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1; *accord* 15 U.S.C. § 45(a)(1).

2

## II.  BACKGROUND

### A.  The Standard-Setting Process and Competitive Safeguards

Lenovo United States is a leading supplier of personal computers, tablets, workstations, and other personal devices.  Many of Lenovo United States' products support the playback of video encoded according to the H.264 standard, a video compression standard developed in the early 2000s by a standard-setting organization ("SSO") called the Joint Video team ("JVT").  Def.'s Counterclaim ¶ 17, ECF 48.  The JVT included members from the International Telecommunications Union (ITU) and a second SSO called the called the International Organization for Standardization/International Electrotechnical Commission ("ISO/IEC").  *Id.*  Nokia directly participated in the development of the standard that would become H.264.  *Id.* at ¶ 18.

Industry standards provide potential benefits to manufacturers, suppliers, and consumers by reducing costs and allowing devices made by different companies to interoperate.  *Id.* ¶¶ 7-8.  But standards also present competitive risks, including that once the standard is set and becomes widely adopted, both product suppliers such as Lenovo United States and consumers become "locked-in" to the use of the functionality that has been standardized.  *Id.* ¶¶ 10-12.  This "lock-in" effect creates a risk that patent holders claiming to have patents that are essential to implement the standard will exploit those patents by demanding excessive royalties from users.  *Id.*

In response to these risks, SSOs create intellectual property rights ("IPR") policies that impose patent disclosure and licensing commitments on parties participating in the development of a standard.  *Id.* ¶ 14.  The JVT adopted and operated under such policies, including the policies and procedures of its sponsoring organizations, the ITU and ISO/IEC.  *Id.* ¶ 18.  The

3

ITU's IPR policy imposes an obligation to disclose to the JVT and its members any patents and applications that a member believes are or may become essential. *Id.* ¶¶ 32-34. As part of such disclosure, the patent holder must commit to licensing any patent rights incorporated into the standard on terms that are reasonable and non-discriminatory. *Id.* ¶ 32. JVT members rely on such disclosure when deciding whether to (1) include in a standard either a member's technology that is subject to alleged patent rights, (2) include an alternative technology that would be free of any such alleged patent rights, or (3) omit the functionality altogether from the standard. *Id.* ¶ 26.

These disclosure obligations protect suppliers who develop products that support the standard. The entire industry can invest in such interoperable, standardized products confident that suppliers will not later face surprise demands for patent royalties based on undisclosed patents, or demands for royalties based on patents that the SSO would have avoided by adopting an alternative technology during the standard-setting process. *Id.* ¶¶ 14-15. These disclosure obligations also protect the public, because full disclosure of potential patent rights promotes widespread adoption of standards, which is good for consumers. *Id.* ¶ 15. Consumers benefit from interoperable products and from the competition that results when suppliers develop products that have common, standardized features and that therefore can compete directly against each other. *Id.* ¶¶ 7, 8, 47.

### B. Nokia's Failure to Disclose the Asserted Patents During Standardization

Nokia actively participated in the JVT's development of the H.264 standard and made numerous technical proposals for inclusion in the standard that Nokia now claims are covered by the asserted patents. *Id.* ¶ 29. Yet Nokia did not disclose the asserted patents until years after the standard was adopted, in violation of the JVT's disclosure obligations. *Id.*

4

### C.     Nokia's Unlawful License and Litigation Campaign

Nokia's failure to timely disclose its rights in the asserted patents had its intended effect—Nokia steered the JVT to adopt technology in the H.264 standard that Nokia now claims is covered by its allegedly essential patents, without the JVT having a chance to consider those alleged patent rights. *Id.* ¶¶ 28-30.  And long after Lenovo United States and its affiliates invested billions of dollars developing and manufacturing products that support the H.264 standard, Nokia began to assert those same undisclosed patents against Lenovo in a coordinated, global litigation campaign. *Id.* ¶ 20.

On September 25, 2019, Nokia filed this action, asserting ten claimed-essential patents against thousands of Lenovo products.  Despite its claims of essentiality, Nokia did not disclose its alleged rights in any of the asserted patents during the development of H.264, and instead waited until years after the standard was finalized to identify its patents to the ITU.  *Id.* ¶ 29.  In addition to this case, Nokia has to date filed ten other patent infringement actions against Nokia in Germany, India, Brazil, and before the International Trade Commission, across which it seeks to enjoin the sale and importation of thousands of Lenovo products into these jurisdictions and extract from Lenovo excessive, non-RAND royalties for its claimed-essential patents.

The FTC has recognized that the conduct in which Nokia has engaged—subversion of the standard-setting process through failure to disclose IPRs and refusal to honor RAND licensing commitments—violates Section 5 of the FTC Act.  *Id.* ¶ 45.  Nokia's conduct also causes anticompetitive harms that affect Lenovo as well as the public.  In particular, Nokia's illegal conduct undermines the standard-setting process, decreases incentives for suppliers to adopt downstream standard-compliant products and services, and increases costs to provide those products and services to consumers.  *Id.* ¶¶ 45, 47.

## III.    ARGUMENT

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff is required only to have pleaded facts sufficient to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept the plaintiff's factual allegations as true and make reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### B.    Lenovo Adequately Alleges Unfair and Deceptive Conduct Under North Carolina's Unfair Competition Law.

With respect to Lenovo United States' allegations of unfair and deceptive conduct, Nokia raises a single argument: that Lenovo United States supposedly pleads "nearly identical allegations" to support both its breach of contract and UDTPA claims. ECF 55 at 6-9. This argument fails, however, because (1) Lenovo United States' UDTPA claim pleads facts and alleges harm independent of Lenovo United States' contract claim, and (2) Nokia's breach of its ITU contractual obligations involved deception and aggravating circumstances that separately support a UDTPA claim as a matter of law.

The UDPTA is a "broad statute with expansive language encompassing various types of unfair trade and business practices." *Bridgetree, Inc. v. Red F Mktg. LLC*, No. 3:10-cv-00228, 2013 WL 443698 at *11 (W.D.N.C., Feb. 5, 2013) (citing *Drouillard v. Keister Williams Newspaper Services, Inc.*, 108 N.C. App. 169, 171, 423 S.E.2d 324, 326 (N.C. Ct. App. 1992)). It prohibits any "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. A practice is unfair when it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," while a deceptive practice includes any

6

conduct that "has the capacity or tendency to deceive; proof of actual deception is not required." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (N.C. 1981); *see also First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (N.C. Ct. App. 1998).

Lenovo United States' unfair competition claim arises from a pattern of misconduct by Nokia, beginning with its manipulation of the standards-setting process and culminating in its demands for excessive licensing royalties from, and a global patent infringement campaign against, Lenovo United States. In particular, Lenovo United States has pled that Nokia orchestrated a scheme to unfairly and deceptively prevent the JVT from fully evaluating relevant technologies that Nokia proposed for inclusion in the H.264 standard—namely, by failing to disclose to the JVT or its members Nokia's intentions to patent the technology after adoption. *See* ECF 48 ¶¶ 12, 21-22, 43-44. Because Nokia did not disclose its patent rights until years later, industry participants such as Lenovo became unknowingly "locked in" to supporting the H.264 standard. Nokia then exploited that position by demanding patent royalties against Lenovo United States on multiple late-disclosed patents and seeking non-RAND royalties for its claimed-essential patents. *Id.* These allegations are far more than "an allegation that Nokia intentionally breached its contract" as Nokia suggests (ECF 55 at 3) and easily state a claim under the broad prohibitions of the UDPTA.

Lenovo United States has also alleged that Nokia's deception of the JVT and its members undermines the ***public*** benefits of standards-setting and threatens competition—this conduct harms the public and is thus actionable under the UDTPA. *See, e.g.*, *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403 (noting that the UDTPA prohibits conduct that "offends established public policy"); *accord Spiegel, Inc. v. F.T.C.*, 540 F.2d 287, 293-94 (7th Cir. 1976) (under analogous

7

FTC Act, finding that otherwise lawful conduct of suing mail order customers under long arm statute was contrary to public policy in that instance and therefore could constitute an "unfair" practice). Consumers, suppliers, and manufacturers all stand to benefit through legitimate use of standards, including through lower development costs, improved competition, and interoperability of devices made by different manufacturers. ECF 48 ¶¶ 7-8. Lenovo United States alleges that Nokia has chilled incentives to participate in beneficial standard-setting, which is likely to lead to higher prices, reduced innovation and quality for consumers, fragmented technology, and a failure to adopt to new or alternative technologies. *Id.* ¶ 47. Nokia's unfair and deceptive practices therefore pose a threat to competition, innovation, and consumer choice that justifies remedial action under the UDTPA.

Indeed, the FTC has recognized that similar conduct violates parallel provisions of the FTC Act—which has identical language as the UDTPA and which North Carolina courts look to for guidance when interpreting the UDPTA. *See Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 262, 266 S.E.2d 610, 620 (N.C. 1980) ("[I]t is appropriate for [North Carolina courts] to look to the federal decisions interpreting the FTC Act for guidance…."). For example, in a complaint against Dell Computer Corporation, the FTC alleged that Dell's deception of an SSO regarding the existence of patents relating to the standard, and Dell's subsequent assertion of those patents against implementers of the standard constituted unfair methods of competition that "restrained competition" in violation of Section 5 of the FTC Act. *See In the Matter of Dell Computer Corporation*, Docket No. C-3658, 121 F.T.C. 616, 1996 WL 33412055 (F.T.C. May 20, 1996). Lenovo United States' UDPTA counterclaim—alleging deception of a standard-setting organization regarding the existence of patents relating to the standard, subsequently asserting those patents against companies that supply products that support the standard, and

8

failing to abide by FRAND commitments—is thus entirely consistent with the FTC's relevant guidance regarding what constitutes prohibited "unfair methods of competition" and "unfair or deceptive acts or practices" under the UDTPA.

In arguing to the contrary, Nokia highlights language comparing allegations from Lenovo United States' breach of contract and UDTPA claims in an effort to show that "Lenovo's alleged harm" is similar across the two claims. ECF 55 at 7. But that argument fails for two reasons. First, any identity of harm is irrelevant. The question raised by Nokia's cited cases is not whether the *harm* is distinct across the claims, but whether the UDTPA claim alleges wrongful conduct independent of an ordinary breach-of-contract claim. As discussed above, Nokia ignores the full scope of Lenovo United States' allegations, focusing only on allegations that Nokia misled the ITU and its members during the standard-setting process and ignoring Lenovo United States' allegations regarding Nokia's broader manipulation of the standards-setting process, failure to abide by its FRAND commitments, and efforts to extract inflated damages by asserting its late-disclosed, claimed-essential patents. Second, Nokia misleadingly omits from its comparison the very next paragraph from Lenovo United States' complaint (¶ 47), which expressly identifies harms to the public that take Lenovo United States' UDTPA claim far outside the bounds of its breach-of-contract claim:

> The harm from Nokia's wrongful conduct also includes harm to the public and/or to competition in the form of lack of adoption of alternative technologies, higher prices and reduced innovation and quality for U.S. consumers purchasing products that support the applicable standard, undermining the procompetitive aspects of standard setting, and chilling incentives to participate in beneficial standard setting. Unless enjoined, Nokia's conduct will continue to cause such irreparable harm.

ECF 48 at ¶ 47.

9

Finally, even if Nokia were correct that Lenovo United States' UDTPA allegations fully overlap with its breach of contract claim—and they do not—those allegations are sufficient to maintain a UDTPA claim because Nokia's breach of contract involved deception and egregious and aggravating circumstances. *See S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) (contractual breach that involves "egregious or aggravating circumstances" gives rise to independent claim under the UDTPA). A breaching party commits an egregious or aggravated breach when it acts deceptively "in the circumstances of [the contract's] breach." *See Software Pricing Partners, LLC v. Geisman*, No. 3:19-cv-00195-RJC-DCK, 2020 WL 3249984, at *10 (W.D.N.C. June 16, 2020) (quoting *SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 347 (N.C. 2020)). Indeed, Nokia's own cited authority acknowledges that "deception either in the formation of the contract or in the circumstance of its breach" may rise to the level of "substantial aggravating circumstances." *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989).

Here, Lenovo United States alleges that Nokia's breach was rooted in deception. Lenovo United States alleges that every party supplying products that support the H.264 standard, including Lenovo United States, was an intended third-party beneficiary of Nokia's contractual commitments to timely to disclose any allegedly essential patent rights in accordance with the disclosure requirements of the ITU IPR policy, and to license any declared-essential patents on RAND terms. ECF 48 ¶ 38. Nokia, however, made numerous technical proposals for inclusion in the H.264 standard, while deceptively withholding from the JVT and its members the fact that Nokia was simultaneously seeking to patent concepts covered by its proposals. ECF 48 ¶¶ 30-35. Nokia's breach ensured that the JVT and its members could not fully evaluate Nokia's proposals when they adopted them into the H.264 standard. *Id.* Because the very nature of

10

Nokia's breach was deceptive, this alone demonstrates substantial aggravated circumstances sufficient to maintain Lenovo United States' UDTPA claim. *See S. Atl.*, 284 F.2d at 541 ("As a rule, misrepresentations, even negligent misrepresentations, are sufficient for an act to qualify as an unfair or deceptive trade practice."); *see also Nexus Techs., Inc. v. Unlimited Power Ltd.*, No. 1:19-CV-00009-MR, 2019 WL 4941178, at *7 (W.D.N.C. Oct. 7, 2019) (ruling that substantial aggravating circumstances were present where breaching party "provided false information regarding their progress and performance under the agreement"); *Poor v. Hill*, 138 N.C. App. 19, 28-29, 530 S.E.2d 838, 845 (N.C. Ct. App. 2000) ("Applicable aggravating circumstances include conduct of the breaching party that is deceptive"); *Mosley & Mosley Builders v. Landin Ltd.*, 97 N.C. App. 511, 518, 389 S.E.2d 576, 580 (1989) (finding that breach accompanied by fraud or deception constitutes an unfair or deceptive trade practice).

Lenovo United States' counterclaims further detail how Nokia has sought to exploit its patents after declaring them essential, in continued violation of Nokia's commitment to license the patents on FRAND terms. As described above, Nokia waited until Lenovo invested billions of dollars in products supporting H.264 before asserting its claimed-essential patents against Lenovo and demanding excessive royalties for its H.264 portfolio. *See* ECF 48 ¶ 44. Nokia's efforts to coerce Lenovo United States into accepting extortionate licensing terms is an "inequitable assertion of [Nokia's] power or position" that further shows deception and aggravating circumstances. *See, e.g.*, *Clark Material Handling Co. v. Toyota Material Handling U.S.A., Inc.*, No. 3:12-CV-00510-MOC, 2015 WL 3514339, at *2-3 (quoting *McInerney v. Pinehurst Area Realty, Inc.*, 162 N.C. App. 285, 289-90, 590 S.E.2d 313, 316–17 (N.C. Ct. App. 2004)). (W.D.N.C. June 4, 2015) (deeming defendant's threat to terminate relationship with counterparty to contract with plaintiff unfair in light of counterparty's dependence on

11

defendant's business)).[1]

Thus, under any reading of the counterclaim's allegations, Lenovo United States has adequately pled a claim under the UDTPA.

## C. Lenovo United States Alleges Injury Proximately Caused by Nokia's Unfair Competition

Nokia's only remaining argument is that Lenovo United States failed to plead proximate cause because it failed to "plausibly allege actual reliance" on Nokia's untimely patent declarations. ECF 55 at 9-13. This argument misstates both the nature of Lenovo United States' claim and the pleading requirements of the UDTPA.

*First*, contrary to Nokia's suggestion, there is no overarching "actual reliance" requirement for all UDTPA claims. *See Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 21, 598 S.E.2d 570, 584 (2004) (noting that North Carolina does not require reliance to successfully pursue a claim under § 75–1.1). A UDTPA plaintiff must show proximate cause, but as the court

---

[1] The cases that Nokia cites involved basic contractual disputes facts very different from the broader unlawful and deceptive scheme on which Lenovo United States bases its UDTPA. For example, in *PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212 (4th Cir. 2009), which Nokia cites repeatedly, the court found that a plaintiff could not show a violation of the UDTPA based on a "straightforward breach of covenant" regarding the use of an easement. *Id.* at 225; *see also id.* at 224 ("The basis for [plaintiff's] claim … is nothing more than two companies fighting over the enforceability of an agreement."). Similarly, in *Domtar AI Inc. v. J.D. Irving, Ltd.*, 43 F. Supp. 3d 635 (E.D.N.C. Aug. 20, 2014), the Court dismissed a UDTPA claim that was based exclusively on an alleged breach of a noncompete agreement by an individual working for the defendant, with no alleged aggravating circumstances even cited in the decision. *Id.* at 641-42. *Avent v. State Farm Fire & Casualty* involved a basic insurance coverage dispute, in which *pro se* plaintiffs alleged that State Farm had failed to live up to its coverage duties under an insurance policy. No. 16-cv-278, 2016 WL 6208478, at *2 (E.D.N.C. Oct. 24, 2016).

Nokia also highlights several cases holding that an "intentional" breach of contract does not constitute aggravating circumstances or support a UDTPA claim. *See* ECF 55 at 6-7. But Lenovo United States does not merely allege an intentional breach; it alleges a deceptive breach that was part of Nokia's broader scheme to defraud and undermine the ITU process, exploit its claimed-essential patents, and hold up Lenovo United States in a serial litigation campaign.

12

summarized in *Cullen v. Valley Forge Life Insurance Co.*, 161 N.C. App. 570 (2003), the proximate cause element does not impose a general requirement on all UDTPA plaintiffs to show actual reliance on the defendant's conduct:

> [T]he statutory language of N.C. Gen. Stat. § 75-1.1 [does not] require reliance in order to show causation …. Moreover, our courts have clearly held that *actual* deception is not an element necessary under N.C. Gen. Stat. § 75-1.1 to support an unfair or deceptive practices claim. … Accordingly, actual reliance is not a factor.

*Id.* at 580, 589 S.E.2d 423 (citing *Johnson*, 300 N.C. at 265, 266 S.E.2d at 622). Indeed, requiring reliance would contradict the public policy of the UDTPA, which is to deter business from unfair and deceptive acts, and to promote good faith. *See Sarah Lee Corp. v. Carter*, 351 N.C. 27, 32, 519 S.E.2d 308, 311 (N.C. 1999).

**Second**, Nokia mischaracterizes Lenovo United States' UDTPA claim as one based solely on alleged fraud and misrepresentations directed toward Lenovo United States. Under North Carolina law, "*[w]hen the alleged UDTPA violation is a misrepresentation*, a plaintiff must prove detrimental reliance on the alleged misrepresentation to satisfy the proximate cause requirement." *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. Oct. 27, 2015) (emphasis added). But the gravamen of Lenovo United States' UDTPA claim is ***not*** that Nokia made a misrepresentation to Lenovo United States: Nokia's deception was directed at ***the JVT and its members*** during the adoption of the H.264 standard. Lenovo United States' UDPTA claim is broader: it flows from Nokia's attempt to capitalize on its deception—i.e., from Nokia wrongfully and unfairly attempting to exploit its late-disclosed patents against Lenovo United States after the adoption of the H.264 standard, and Nokia harming both consumers and the public through its abuse of the standard-setting process. ECF 48 ¶¶ 44-47. The cases that Nokia relies on are distinguishable on this basis alone: they all involve cases where the ***sole basis*** of the

13

UDTPA claim was an alleged fraud or misrepresentation by the defendant directed specifically toward the plaintiff.[2] Moreover, it cannot be the case that a party like Nokia can use deception against one party to obtain an unfair competitive position and then—when it tries to exploit that position against third parties like Lenovo United States—argue that the third parties have no remedy because they were not the immediate victims of its deception and therefore did not directly rely on the deceptive conduct. *See Frezza v. Google Inc.*, No. 12-cv-00237, 2013 WL 1736788, at *6 n.3 (N.D. Cal. April 22, 2013) ("[S]imilar to North Carolina's law, *no reliance* is required to prove violations of the [California] UCL based on 'unlawful' or 'unfair' conduct.").

Moreover, as described above, Lenovo United States has alleged that Nokia's manipulation of the standards-setting process and its attempts to hold up parties like Lenovo United States harm competition and are contrary to public policy, including through reduced adoption of alternative technologies, higher prices, and lower innovation and quality for U.S. consumers. ECF 48 ¶ 47. Lenovo United States' allegations of unlawful and unfair conduct— toward both Lenovo United States and the public—go far beyond a simple case of misrepresentation and are sufficient under the UDTPA.

*Third*, there can be no doubt that Lenovo United States alleges that it suffered harm as a direct, proximate result of Nokia's unfair, unlawful, and deceptive conduct. ECF 48 ¶ 46.

---

[2] *See, e.g.*, *Solum*, 147 F. Supp. 3d at 411, 413-14 (dismissing UDTPA claim based on solely on alleged misrepresentations regarding contractor certification program due to plaintiff's failure to allege reasonable reliance on challenged statements); *Penguin Restoration, Inc. v. Nationwide Mut. Ins. Co.*, No. 13-cv-63, 2014 WL 715123, at *3, (E.D.N.C. Feb. 21, 2014) (sustaining UDTPA claim where the plaintiff adequately alleged reliance on defendant's alleged misrepresentations to plaintiff); *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 Fed. Appx. 276, 287 (4th Cir. 2014) (dismissing UDTPA claim based exclusively on alleged misrepresentations about obligations under an interest rate swap agreement); *Raleigh Flex Owner I, LLC v. MarketSmart Interactive, Inc.*, No. 09-cv-699, 2011 WL 923356, at *12-14 (M.D.N.C. Mar. 7, 2011) (entering summary judgment for defendants UDTPA claim based entirely on alleged fraudulent misrepresentations by the defendant to plaintiff).

14

Nokia's manipulation of the standard-setting process led the ITU to accept technology into the H.264 standard that its members believed was unencumbered by Nokia's alleged patent rights, and led Lenovo United States to unwittingly expose itself to the threat of Nokia's hold-up power. Lenovo United States invested significant resources to supply products that support the H.264 standard on the belief that Lenovo United States would not be threatened with royalty demands based on Nokia's asserted patents. *See, e.g.*, ECF 48 ¶¶ 31, 44-46. But because of Nokia's unlawful patent assertion campaign, Lenovo United States has been forced to expend resources to defend against claims of patent infringement and has suffered or been threatened with increased costs, loss of customers, and other threats to its business and customer goodwill. *Id.* ¶ 46. That harm flows directly from Nokia's wrongful assertion of patents that were supposed to have been free from any alleged Nokia patent rights.

*Finally,* Nokia's reliance on *Apple Inc. v. Samsung Elecs. Co*., No. 11-cv-01846-LHK, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011)—for the incorrect proposition that proximate causation requires Lenovo United States to plead that there was another technology available and that the standard setters would have selected it over Nokia's technology—is misplaced. First, *Apple* involved an antitrust claim under Section 2 of the Sherman Act, not an unfair competition claim under a broader statute such as the UDTPA or its federal analog, Section 5 of the FTC Act. Indeed, as noted above, the FTC has found, when applying Section 5 of the FTC Act, that conduct such as Nokia's is "to the prejudice and injury of the public." *In the Matter of Dell Computer Corporation*, Docket No. C-3658, 121 F.T.C. 616, 1996 WL 33412055 (F.T.C. May 20, 1996). Second, as explained above, Lenovo United States has squarely alleged harm proximately caused by Nokia's conduct *after* the standard-setting process. Lenovo United States invested significant resources to supply products that support the H.264 standard on the

15

reasonable belief that Lenovo United States would not be threatened with royalty demands based on Nokia's asserted patents. But Nokia has harmed Lenovo United States by engaging in a patent-assertion campaign that forces Lenovo United States to defend itself against precisely those patents.

Nokia's argument boils down to the outrageous assertion that it should be allowed to engage in a concealed scheme to gain a competitive advantage and then—when it attempts to exploit that advantage years later—it can demand evidence of precisely the type that Nokia's concealed scheme prevented from coming into existence. Without a disclosure of Nokia's alleged patent rights, the JVT had no reason to explore alternative technologies or consider leaving the relevant functionality out of the standard—which is precisely the type of evidence that Nokia now wants Lenovo United States to produce. *See* ECF 48 ¶ 26 ("If Nokia had disclosed its allegedly essential patents, as it was required to do, the JVT could have considered whether to adopt alternative technologies or declined to include the relevant functionality in the standard."). Wrongdoers should not be permitted to benefit from their own wrongdoing. *See, e.g., United States v. Microsoft*, 253 F.3d 34, 79 (D.C. Cir. 2001) ("[T]he underlying proof problem is the same—neither plaintiffs nor the court can confidently reconstruct a product's hypothetical technological development in a world absent the defendant's exclusionary conduct. To some degree, 'the defendant is made to suffer the uncertain consequences of its own undesirable conduct.'" (quoting 3 Areeda & Hovenkamp, Antitrust Law ¶ 651c, at 78) (1996)).

Accordingly, Lenovo United States sufficiently alleges an injury proximately caused by Nokia's unfair, unlawful, and deceptive conduct.

## IV.    CONCLUSION

For the foregoing reasons, Lenovo United States respectfully requests that the Court deny

16

DATED: August 10, 2020

Respectfully submitted,

/s/ *Hayden J. Silver III*

Hayden J. Silver III, NCSB No. 10037
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
P.O. Box 831
Raleigh, North Carolina 27601
Telephone: (919) 755-2188
E-mail: jay.silver@wbd-us.com

Jacob S. Wharton, NCSB No. 37421
Ana J. Friedman, NCSB No. 53117
WOMBLE BOND DICKINSON (US) LLP
One West 4th Street
Winston-Salem, North Carolina 27101
Telephone: (336) 747-6609
E-mail: jacob.wharton@wbd-us.com
          ana.friedman@wbd-us.com

William F. Lee
Richard W. O'Neill
Sarah R. Frazier
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Email: william.lee@wilmerhale.com
          richard.o'neill@wilmerhale.com
          sarah.frazier@wilmerhale.com

Todd C. Zubler
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Email: todd.zubler@wilmerhale.com

17

*Counsel for Lenovo (United States) Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, a true and correct copy of the above and foregoing DEFENDANT LENOVO (UNITED STATES) INC.'S OPPOSITION TO NOKIA'S MOTION TO DISMISS was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to the attorneys of record for all parties.

/s/ *Hayden J. Silver III*

Hayden J. Silver III, NCSB No. 10037
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
P.O. Box 831
Raleigh, North Carolina 27601
Telephone: (919) 755-2188
E-mail: jay.silver@wbd-us.com

Jacob S. Wharton, NCSB No. 37421
Ana J. Friedman, NCSB No. 53117
WOMBLE BOND DICKINSON (US) LLP
One West 4th Street
Winston-Salem, North Carolina 27101
Telephone: (336) 747-6609
E-mail: jacob.wharton@wbd-us.com
            ana.friedman@wbd-us.com

*Counsel for Lenovo (United States) Inc.*

19